IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

DAVID A. WATSON                                                    PLAINTIFF

vs.                                    Civil No. 1:08-cv-01084

MICHAEL J. ASTRUE                                                  DEFENDANT
Commissioner, Social Security Administration

**MEMORANDUM OPINION**

David A. Watson ("Plaintiff") brings this action pursuant to § 205(g) of Title II of the Social Security Act ("The Act"), 42 U.S.C. § 405(g) (2006), seeking judicial review of a final decision of the Commissioner of the Social Security Administration ("SSA") denying his applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. The parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings. (Doc. No. 4).[1] Pursuant to this authority, the Court issues this memorandum opinion and orders the entry of a final judgment in this matter.

1. **Background:**

Plaintiff filed his first application for SSI on August 28, 2000 and alleged an onset date of March 15, 2000. (Tr. 420-422). Plaintiff filed his second application for SSI on April 28, 2004 and alleged an onset date of January 1, 2001. (Tr. 427). On August 28, 2000, Plaintiff filed an

---

[1] The docket numbers for this case are referenced by the designation "Doc. No." The transcript pages for this case are referenced by the designation "Tr."

1

application for DIB and alleged an onset date of March 5, 2000. (Tr. 99).[2] Plaintiff alleged he was disabled due to chronic hepatitis C, personality disorder, schizophrenia, and gastrointestinal problems from hepatitis C. (Tr. 427). At the administrative hearing on August 16, 2006, Plaintiff also alleged he was disabled due to orthopedic issues, including a cracked tailbone, arthritis, and lower spinal problems. (Tr. 441). These applications were initially denied and were denied again on reconsideration. (Tr. 53-57).

On November 16, 2004, Plaintiff requested an administrative hearing on his applications. (Tr. 89). This hearing request was granted, and a hearing on this matter was held on August 16, 2006 in El Dorado, Arkansas. (Tr. 437-497). Plaintiff was present and was represented by counsel, Denver Thornton, at this hearing. *See id.* Plaintiff and Vocational Expert ("VE") Tyra Watts testified at this hearing. *See id.* On the date of this hearing, Plaintiff was forty-two (42) years old, which is defined as a "younger person" under 20 C.F.R. § 404.1563(c) (2009), and had obtained his GED and attended college for two years. (Tr. 443).

On March 23, 2007, the ALJ entered an unfavorable decision denying Plaintiff's applications for DIB and SSI. (Tr. 14-27). In this decision, the ALJ determined Plaintiff met the insured status requirements of the Act on January 1, 2001 and continued to meet them through December 31, 2006. (Tr. 25, Finding 1). The ALJ determined Plaintiff had not engaged in Substantial Gainful Activity ("SGA") since January 1, 2001. (Tr. 25, Finding 2). The ALJ determined Plaintiff had the following severe impairments: hepatitis C, musculoskeletal pain, depression, anxiety, and drug abuse. (Tr. 26, Finding 3). However, the ALJ also determined Plaintiff did not have an impairment or a

---

[2] Plaintiff alleged three different onset dates in his applications. Because Plaintiff alleged three different onset dates, this Court will presume Plaintiff intended to allege January 1, 2001 as an onset date because he stopped working in December of 2000. (Tr. 446).

combination of impairments listed in, or medically equal to one listed in, the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4 ("Listings").  (Tr. 26, Finding 3).

In this decision, the ALJ also evaluated Plaintiff's subjective complaints and determined his RFC.  (Tr. 14-27).  First, the ALJ evaluated Plaintiff's subjective complaints pursuant to the requirements of *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir. 1984) and found his claimed limitations were not "borne out by the overall evidence" and were not fully credible.  (Tr. 26, Finding 4).  Second, the ALJ determined, based upon this review of Plaintiff's subjective complaints, the hearing testimony, and the evidence in the record, that Plaintiff retained the RFC to perform light unskilled work activity.  (Tr. 26, Finding 8).  Specifically, the ALJ found Plaintiff had the following physical RFC:

> The claimant has the residual functional capacity to perform work-related activities except for work involving lifting more than 20 pounds occasionally, 10 pounds frequently; standing and/or walking with normal breaks for a total of about 6 hours in an 8-hour workday; and mostly sitting with some pushing and pulling of arm and leg controls.  In addition, he could occasionally stoop and bend but would not be required to crouch.

(Tr. 26, Finding 5).

The ALJ also evaluated Plaintiff's mental RFC.  (Tr. 26, Finding 6-7).  Excluding his drug dependence, the ALJ found Plaintiff had the following mental limitations: "mild in activities of daily living, moderate in social functioning; mild in concentration, persistence, and pace; and none in episodes of decompensation each of extended duration."  (Tr. 26, Finding 6).  The ALJ also found, excluding his drug dependence and despite his mental impairments of major depression and anxiety, that he "remains able to perform work where interpersonal contact is incidental to work performed, e.g. assembly work; complexity of tasks is learned and performed by rote, few variables, little

3

judgment: supervision required is simple, direct and concrete." (Tr. 26, Finding 7). The ALJ also found that these limitations were consistent with the definition of unskilled work. *See id.*

The ALJ then determined Plaintiff did not retain the RFC to perform his Past Relevant Work ("PRW"), but excluding his drug dependence, did retain the RFC to perform other work existing in significant numbers in the national economy. (Tr. 26, Findings 11, 13). Plaintiff and the VE testified at the administrative hearing regarding these issues. (Tr. 437-497). Based upon this testimony, the ALJ determined Plaintiff was unable to perform his PRW as an inspector. (Tr. 26, Finding 11). However, the ALJ also determined there were a significant number of other jobs existing in the national economy Plaintiff was capable of performing. (Tr. 27, Finding 13). The ALJ found, considering his age, education, past work experience, and RFC, Plaintiff was capable of performing work as an information clerk (approximately 5,600 such jobs in Arkansas and 980,000 in the United States) and telephone quotations clerk (approximately 6,500 such jobs in Arkansas and 900,000 in the United States). (Tr. 26-27, Finding 13). The ALJ then determined, excluding his drug dependence, that Plaintiff had not been under a "disability," as defined by the Act, at any time through the date of his decision. (Tr. 27, Finding 14).

In making this disability determination, the ALJ also evaluated the impact of Plaintiff's drug dependence. First, the ALJ found Plaintiff's RFC for light, unskilled work was "substantially diminished to that of less than a full range of sedentary work by his mental impairment of drug dependence." (Tr. 27, Finding 15). Second, the ALJ found Plaintiff's drug dependence resulted in the following mental limitations: "mild in activities of daily living; marked in social functioning; moderate in concentration, persistence, or pace; and none in episodes of decompensation." (Tr. 27, Finding 16). Third, the ALJ found Plaintiff was a drug abuser and that a finding of drug addiction

4

was a contributing factor material to a finding of disability. (Tr. 27, Finding 17). The ALJ also

found that but for Plaintiff's drug addiction, he would not be found disabled. *See id.* Accordingly,

the ALJ found Plaintiff did not have a disability encompassed by the Act and pursuant to Section 105

of Public Law No. 104-121, and he was not entitled to benefits under either Title II or Title XVI.

(Tr. 27, Finding 18).

On March 26, 2007, Plaintiff requested that the Appeals Council review the ALJ's

unfavorable decision. (Tr. 10). *See* 20 C.F.R. § 404.968. On September 10, 2008, the Appeals

Council declined the review the ALJ's unfavorable decision. (Tr. 6-8). On October 28, 2008,

Plaintiff filed the present appeal. (Doc. No. 1). The parties consented to the jurisdiction of this

Court on October 31, 2008. (Doc. No. 4). Both parties have filed appeal briefs. (Doc. Nos. 6-7).

This case is now ready for decision.

**2. Applicable Law:**

In reviewing this case, this Court is required to determine whether the Commissioner's

findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. § 405(g)

(2006); *Ramirez v. Barnhart,* 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than

a preponderance of the evidence, but it is enough that a reasonable mind would find it adequate to

support the Commissioner's decision. *See Johnson v. Apfel,* 240 F.3d 1145, 1147 (8th Cir. 2001).

As long as there is substantial evidence in the record that supports the Commissioner's decision, the

Court may not reverse it simply because substantial evidence exists in the record that would have

supported a contrary outcome or because the Court would have decided the case differently. *See*

*Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001). If, after reviewing the record, it is possible

to draw two inconsistent positions from the evidence and one of those positions represents the

findings of the ALJ, the decision of the ALJ must be affirmed.  *See Young v. Apfel,* 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his or her disability by establishing a physical or mental disability that lasted at least one year and that prevents him or her from engaging in any substantial gainful activity.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998);  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines a "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§ 423(d)(3), 1382(3)(c).  A plaintiff must show that his or her disability, not simply his or her impairment, has lasted for at least twelve consecutive months.  *See* 42 U.S.C. § 423(d)(1)(A).

To determine whether the adult claimant suffers from a disability, the Commissioner uses the familiar five-step sequential evaluation.  He determines: (1) whether the claimant is presently engaged in a "substantial gainful activity"; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations (if so, the claimant is disabled without regard to age, education, and work experience); (4) whether the claimant has the Residual Functional Capacity (RFC) to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.  *See Cox,* 160 F.3d at 1206;  20 C.F.R. §§ 404.1520(a)-(f).  The fact finder only considers the plaintiff's age, education, and work experience in light of his or her RFC if the final stage of this

6

analysis is reached.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2003).

## 3. <u>Discussion:</u>

Plaintiff brings the present appeal claiming the ALJ's disability determination is not supported by substantial evidence in the record.  (Doc. No. 6, Pages 3-16).  Specifically, Plaintiff claims the ALJ erred by the following: (1) not appreciating the impact of Plaintiff's impairments in combination; (2) improperly weighing Plaintiff's Interfaith Clinic treatment note dated July 25, 2006; and (3) finding drug use was a contributing factor material to his disability determination.  *See id.* In response, Defendant argues that the ALJ's disability determination is supported by substantial evidence in the record and that the ALJ properly evaluated Plaintiff's impairments in combination, properly analyzed the medical evidence, and properly found Plaintiff's drug use was a contributing factor to his disability determination.  (Doc. No. 7, Pages 4-16).  This Court will address each of Plaintiff's three arguments; but since Plaintiff's second argument is more appropriately addressed as a part of his first argument (regarding personality disorder), that issue will be addressed at that time.

### A.    Combination of Impairments

Plaintiff argues the ALJ did not appreciate the combined effects of his severe impairments. (Doc. No. 6, Pages 6-11).  Plaintiff argues that, in combination, his hepatitis C, musculoskeletal pain, depression, anxiety, and personality disorder are disabling and that the ALJ should have found these impairments were disabling in combination.  *See id.*  In response, Defendant argues that the ALJ properly found these impairments in combination were not disabling and that the ALJ's disability determination should be affirmed.  (Doc. No. 7, Pages 4-10).  Defendant also argues that in evaluating these impairments in combination, the ALJ fully complied with the Eighth Circuit's

standards for such an evaluation.

As an initial matter, this Court finds the ALJ properly evaluated these impairments in combination.  The Social Security Act requires the ALJ to consider the combined effect of all of the claimant's impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  *See* 20 C.F.R. § 404.1523 (2007).  In the present action, in reviewing these claimed impairments, the ALJ stated that Plaintiff did "not have an impairment or *combination of impairments* listed in or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4" and outlined each of Plaintiff's severe impairments and the medical records related to those impairments as a part of a fourteen-page opinion. (Tr. 14-27).  These statements are sufficient in the Eighth Circuit to establish that the ALJ properly considered the combined effect of a plaintiff's impairments.  *See Hajek v. Shalala,* 30 F.3d 89,  92 (8th Cir. 1994) (holding that statements such as "the evidence *as a whole* does not show that the claimant's  *symptoms* . . . preclude his past work as a janitor" and "[t]he claimant's *impairments* do not prevent him from performing janitorial work . . ." sufficiently establish that the ALJ properly considered the combined effects of the plaintiff's impairments).

Thus, pursuant to the Eighth Circuit's holding in *Hajek,* this Court finds the ALJ properly considered the Plaintiff's impairments in combination.   Plaintiff has alleged that he suffers from a number of different impairments.  (Doc. No. 6, Pages 6-11).  However, this Court is not required to find a claimant is disabled simply because he or she has alleged a long list of medical problems.  The ALJ's opinion sufficiently indicates that the ALJ properly considered the combined effects of Plaintiff's impairments, and the ALJ properly considered the severity of the combination of the Plaintiff's impairments.  *See Hajek,* 30 F.3d at 92.  Since this Court has found the ALJ did not err

in evaluating Plaintiff's impairments in combination, this Court will next determine whether the ALJ should have found any of Plaintiff's four impairments were individually disabling.

### 1.      Hepatitis C

The ALJ found Plaintiff suffered from the severe impairment of hepatitis C. (Tr. 27, Finding 3). Plaintiff's medical records support his claim that he suffers from hepatitis C and was diagnosed with this disease in 2000. (Tr. 111, 239-243, 277, 327). His medical records also indicate that his hepatitis C was successfully treated with medication when he took that medication. (Tr. 213, 277-373). However, these records indicate Plaintiff did not consistently take his hepatitis C medication. (Tr. 233-238, 276-277).

Plaintiff claims he did not have hepatitis C medication or did not consistently take it because he could not afford it. (Doc. No. 6, Page 8). Plaintiff argues in his brief, "This is a case of no money, no insurance/at times, Plaintiff had Medicaid and sometimes, he did not." *Id.* Despite this argument, Plaintiff's medical records indicate that he could have obtained low cost or free medical treatment if he would have been more aggressive in obtaining that treatment. (Tr. 276-277). On September 14, 2004, Dr. Robert Floss, M.D., referred Plaintiff to a drug company which had an indigent medication program, and this company might have been able to assist Plaintiff in obtaining his medication. *See id.* Plaintiff was to "follow up in 1 month" to further discuss possibly obtaining this medication, but there is no indication in the record Plaintiff followed-up with Dr. Floss or made any additional efforts to obtain free or low-cost medical treatment. Accordingly, the ALJ did not err in finding Plaintiff's failure to take his hepatitis C medication was not excused (Tr. 19). *See Murphy v. Sullivan,* 953 F.2d 383, 386 (8th Cir. 1992) (requiring a claimant to demonstrate that he or she sought to obtain low-cost medical treatment or had been denied medical care because of a financial

9

condition).

Plaintiff claims he suffered severe side effects from the medication for hepatitis C which caused him to be unable to work.  (Doc. No. 6, Page 5).  Notably, medical records from Dr. Angela K. Nutt, M.D. indicate that Plaintiff was suffering from "chills, restlessness, night sweats, diarrhea, and sometimes abdominal cramping" that might have been side effects from Plaintiff's hepatitis C medication.  (Tr. 214-215).  Dr. Nutt even stated in this record dated July 11, 2000 that Plaintiff had been "unable to work since he started treatment with Rebetron."  (Tr. 214).  During the administrative hearing, however, Plaintiff testified that he worked through that time period and did not stop working until December of 2000 when the IP plant shut down.[3]  (Tr. 446).  Accordingly, while Plaintiff may have taken a brief period off from work in 2000 while he was being treated with Rebetron, this medication and the side effects of this medication are not what stopped him from working.[4] Plaintiff even stated at the administrative hearing that he did not have any more hepatitis C medication but "would like to get back on" it.  (Tr. 447).  During his testimony, Plaintiff made no mention of any severe or adverse side effects of this medication.

Furthermore, there is no indication in the record and Plaintiff has provided no evidence establishing that his hepatitis C places any limitations on his ability to perform SGA.  Plaintiff has the burden of establishing his hepatitis C is disabling, and the bare claim that he has been unable to work due to his hepatitis C is not sufficient.  *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998);

---

[3] The record indicates that shortly before December of 2000, Plaintiff may have been on some other type of disability (Tr. 303).  It is unclear why Plaintiff was on disability or what type of disability he was receiving. However, the fact that Plaintiff may have been on some type of short-term disability does not establish he was disabled under the SSA regulations.  Furthermore, Plaintiff testified at the administrative hearing that he stopped working in December of 2000.  (Tr. 446).

[4] Indeed, Plaintiff reported to Dr. Khalid Mahmood, M.D. that he "stopped working because as [sic.] the company was closed."  (Tr. 259).  Plaintiff did not report that he stopped working because of his disabling hepatitis C and the medication used to treat that disease.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Furthermore, the fact that he worked through 2000 after he was diagnosed with hepatitis C and was receiving treatment for his hepatitis C further undercuts his claim.

### 2.    Musculoskeletal Pain

Plaintiff claims he is disabled due to musculoskeletal pain. (Tr. 441). Specifically, Plaintiff claims this pain stems from his cracked tailbone, arthritis, and "low spinal problems." *See id.* Plaintiff's medical records support his claim that he suffers from chronic musculoskeletal pain. (Tr. 277, 281, 297). Plaintiff's medical records, including his treatment records, also support the ALJ's determination that his pain was not disabling and could be controlled with medication. (Tr. 277-373). Plaintiff consistently sought to refill his pain medication and did not report disabling pain while he took those medications. (Tr. 279, 285, 289). Notably, on May 14, 2003, Dr. Floss reported "[s]table pain control on Lorcet." (Tr. 289).

Plaintiff has provided no medical evidence, and this Court finds no medical evidence, supporting his claim that he is disabled due to musculoskeletal pain. Plaintiff has the burden of establishing he is disabled due to this pain. *See Cox v. Apfel*, 160 F.3d 1203, 1206 (8th Cir. 1998); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The ALJ, after evaluating Plaintiff's medical records, Plaintiff testimony at the administrative hearing[5], and the other evidence in the record, found Plaintiff was not disabled. This Court finds no error with the ALJ's findings regarding Plaintiff's alleged disability due to musculoskeletal pain.

### 3.    Anxiety and Depression

Plaintiff claims he is disabled due to anxiety and depression. (Doc. No. 6, Pages 11-14).

---

[5] Plaintiff has raised no claim that the ALJ erred in evaluating his subjective complaints.

11

Plaintiff's medical records support his claim that he had been diagnosed with depression and anxiety. (Tr. 285).  However, those records also indicate that both were successfully treated with medication. (Tr. 277-373).  Indeed, during most of the relevant time period, Plaintiff consistently took medication to treat his anxiety and depression (Tr. 200-201), with no documented deterioration of his anxiety and depression, no admittance into the hospital for mental problems, and no consistent treatment for those problems by a mental health professional.  Plaintiff claims he did not seek mental health treatment because he did not have the money to afford that treatment.  (Tr. 473-474).  The transcript does not support his claim.  Notably, despite the free or low-cost nature of Interfaith Clinic to treat his mental health problems, Plaintiff only went to that clinic once.  (Tr. 402-407).

Furthermore, Dr. Alice Abbott, Psy.D. examined Plaintiff for his anxiety and depression.  (Tr. 417-419).  After examining Plaintiff, she noted he had very few limitations due to his anxiety and depression.  *See id.*  Specifically, she found Plaintiff suffered from no impairment in his ability to understand and remember short, simple instructions; no impairment in his ability to carry out short, simple instructions; a slight limitation in his ability to understand and remember detailed instructions; a slight limitation in his ability to carry out detailed instructions; and a slight limitation in his ability to make judgments on simple work-related decisions.  (Tr. 417).  Accordingly, based upon these facts, this Court finds substantial evidence supports the ALJ's disability determination regarding Plaintiff's anxiety and depression.

### 4.    Personality Disorder

Plaintiff claims he is disabled due to his personality disorder.  (Doc. No. 6, Pages 11-14). Plaintiff cites his medical records from Interfaith Clinic dated July 25, 2006 to support his claim that he is disabled due to personality disorder.  *See id.*  In these records, the physician at Interfaith Clinic

12

found Plaintiff suffered from multiple personality disorder and referred Plaintiff to "SARHC for management of personality disorder." (Tr. 403). There is no indication Plaintiff ever sought treatment with SARHC. However, regardless of this failure to seek treatment, this medical record supports Plaintiff's claim that he is disabled due to personality disorder. Also, Plaintiff's military records support his claim he is disabled due to a personality disorder. Notably, Plaintiff was honorably discharge from the military in 1984 for "Other Physical/Mental Condition–Personality Disorder." (Tr. 401).

Dr. Abbott's findings, although not referenced in Plaintiff's brief, support Plaintiff's claim that he is disabled due to personality disorder. (Tr. 418). Dr. Abbott found Plaintiff had marked restrictions in his ability to deal with "supervision, co-workers, and work pressures in a work setting" due to his personality disorder. *See id.* Dr. Abbott stated the following:

> Mr. Watson reports a history of termination from a job "for nothing much," and of leaving college 5 hours short of his degree because "Sometimes I just can't face nobody. Sometimes can't get out of bed." His MMPI-2 responses suggest interpersonal difficulty. Additionally, his presentation during this evaluation was with blunted effect and minimal conversation. While he was able to communicate cooperatively in this setting, his affective presentation may be problematic in a work setting which requires interaction with others.

(Tr. 418).

Based upon these records regarding Plaintiff's personality disorder, this Court might find substantial evidence does not support the ALJ's disability determination. However, the ALJ also found that because of Plaintiff's drug use, he was not disabled. (Tr. 27, Finding 18). Therefore, this Court must next determine whether the ALJ properly found that Plaintiff was not disabled due to his drug use and that drug use was a contributing factor material to his finding of disability. If his drug use is determined to be such a contributing factor, then, in accordance with Section 105 of Public

13

Law No. 104-121, Plaintiff is not entitled to benefits under either Title II or Title XVI.

      **B.**     **Drug Use as a Contributing Factor**

     In his opinion, the ALJ found Plaintiff was a "medically determined drug abuser." (Tr. 27, Finding 17). The ALJ also determined that this finding of drug addiction was a contributing factor material to his disability determination. *See id.* Based upon this finding, the ALJ determined Plaintiff was not disabled, despite Plaintiff's severe impairment of personality disorder. (Tr. 27, Finding 18). In his appeal brief, Plaintiff claims the ALJ erred by finding that he was a medically determined drug abuser and that his drug addiction was a contributing factor material to a finding of disability. (Doc. No. 7, Pages 12-16). Plaintiff also claims that "[d]rug addiction or alcoholism has not been established herein" and that "[o]ccasional 'use' of street drugs, while unfortunate, is not 'abuse.'" *See id.*

     In assessing whether drug abuse is a "contributing factor material to a finding of disability," the ALJ must first determine whether the claimant has a drug addiction. *See* 20 C.F.R. § 404.1535(a). In the present action, this Court finds the ALJ correctly found Plaintiff has a drug addiction. At the administrative hearing on August 16, 2006, Plaintiff claimed he had not smoked marijuana in "a year probably." (Tr. 448). This statement suggests that he no longer uses drugs. However, in October of 2006, Plaintiff admitted to Dr. Zahniser, M.D. that he abused drugs and had smoked marijuana a few days before his appointment. (Tr. 408). On November 30, 2006, Plaintiff also reported to Dr. Abbott that he smoked marijuana "now and then." (Tr. 414).

     Plaintiff denied using cocaine both in his brief (Doc. No. 6, Pages 8-9) and at the administrative hearing (Tr. 492). As a part of his consultative evaluation with Dr. Abbott, Plaintiff

14

also did not report any drug use other than marijuana.[6]  (Tr. 418).  Plaintiff's medical records, however, state Plaintiff had used cocaine.  On October 7, 2002, after admitting himself to the hospital to obtain medication for his hepatitis C, Plaintiff tested positive for cocaine.  (Tr. 243).  Therefore, this Court finds the ALJ properly determined Plaintiff has a drug addiction.

Second, the ALJ must determine whether the claimant would still be found disabled if he or she stopped using drugs.  *See* 20 C.F.R. § 404.1535(b)(1).  In her report. Dr. Abbott found that, although not conclusive, Plaintiff's drug use likely impacted his functioning.  (Tr. 419).  Dr. Abbott also found, "If he [Plaintiff] is using marijuana or other drugs to a great extent then reported, this could negatively impact his alertness, productivity, pace, and interpersonal interactions." (Tr. 418).  Based upon Plaintiff's medical records, Plaintiff was using drugs (including marijuana and cocaine) more than he reported to Dr. Abbott.  Therefore, Plaintiff's drug use likely impacted his personality disorder even more than Dr. Abbott stated in her report.  Furthermore, because of Plaintiff's misrepresentations both to his doctors and to the ALJ regarding his drug use, it is difficult to adequately determine the impact Plaintiff's drug use had on his ability to work.

However, Plaintiff's medical records indicate he was able to at least briefly return to work three years after his alleged onset date (Tr. 287).  During that time period, there is no indication he was on drugs.  (Tr. 285) (stating Plaintiff "[a]pparently, continues to be drug free"). These records indicate Plaintiff can work while not on drugs.  In light of these records and Dr. Abbott's findings, this Court upholds the ALJ's determination that Plaintiff's drug addiction was a contributing factor material to his disability determination and finds that determination is supported by substantial

---

[6] Dr. Abbott also speculated about whether Plaintiff had taken other drugs or not.  Dr. Abbott stated, "He [Plaintiff] reported no current problems from the drug use but it is difficult to determine whether this is accurate or whether he minimizes drug use & impact.  Records indicate a history of other drug use which he did not report in this interview."  (Tr. 418).

evidence in the record and should be affirmed.

**4. <u>Conclusion:</u>**

Based on the foregoing, the undersigned finds that the decision of the ALJ, denying benefits to Plaintiff, is supported by substantial evidence and should be affirmed.  A judgment incorporating these findings will be entered pursuant to Federal Rules of Civil Procedure 52 and 58.

**ENTERED this 7th day of December, 2009.**

        s/  Barry A. Bryant
        HON. BARRY A. BRYANT
        U. S. MAGISTRATE JUDGE